## DUNLAP v. HUNDLY.

The provisions of the Code of Practice, art. 746 *et seq.*, authorizing the summary execution of foreign judgments, must be construed strictly.

An order of seizure and sale, obtained on a foreign judgment purporting to have been rendered on the confession of the defendant made through his attorney, will be enjoined, where the transcript of the foreign record has a suspicious appearance on its face, and where, though the plaintiff in injunction denied under oath the authority of the attorney to confess a judgment for him, and swore that he never abandoned his defence, no evidence is offered to disprove his allegations.

APPEAL from the District Court of Madison, *Curry*, J. The plaintiff enjoined an order of seizure and sale obtained by the defendant *Hundly*, against the plaintiff, on the record of a judgment rendered in Mississippi. The petition charges in substance : " That in the winter or spring of 1837, the petitioner purchased a negro man, *Henry*, from *Thomas Hundly*, a negro trader, who had brought said negro from the State of Virginia to the State of Mississippi, for sale as merchandize : that the sale and purchase of the slave was made in Mississippi : that said slave was brought into the State of Mississippi for sale, and sold to him afer the adoption of the present constitution of that State, which petitioner avers prohibits the introduction and sale of slaves introduced for sale : that he purchased said slave for a house servant, the vendor representing him as sober and honest, when he knew him to be an inveterate drunkard, and that he had been sold to him in consequence of his intemperate habits : that he made to *David Hundly* his note for $1,800, payable four months after date, for the price of said slave : that at the maturity of his note he refused to pay it, on the ground that the slave was not such as he had been represented, and was wholly unfit for the purpose for which he had been bought : that suit was brought on the note, in which he filed a plea in person, expecting to be relieved from the payment on two grounds; first, because a fraud had been practiced on him in the sale of the negro, in representing him as possessed of steady and temperate habits : second, because the sale was a nullity, being made in direct violation of the constitution of Mississippi : that after suit was commenced, petitioner sent the slave to *Hundly*, who took him back and kept him, only crediting the note with $1,400: that at the September term, 1840, some person representing himself as the attorney of the petitioner, withdrew the plea filed by him in said suit, thereby depriving him of the means of making his defence : that he never authorised the withdrawal of his plea; that at that term a judgment was rendered against him, without any plea, for the sum of $394 : that at the June term 1842, said judgment was altered and rendered against him for $753 40: that said suit was brought in the name of *David W. Hundly* for the use of *Thomas Hundly* : that *Hundly* has obtained an order of seizure and sale on said judgment, which the petitioner avers is void, being rendered on a void note : that the demand is unjust : that the order of seizure and sale issued illegally on the record of a judgment without plea filed." The petition concludes with a prayer, that the injunction may be perpetuated and for general relief.

The defence is : 1. That the affidavit is insufficient, not being positive and unconditional. 2. That the judgment was rendered after issue joined, is properly authenticated, and cannot be enquired into. 3. That the plaintiff cannot

set up fraud or new matter, the judgment having been rendered after appear-    Dunlap
ance and issue joined. 4. That the allegations of the plaintiff are not *correct*.    *v.*
Hundly.

A witness proved that the note was given for the price of the slave *Henry*,
the property of *Thomas Hundly* : that the note was handed to *Hundly*
shortly after the sale : that he sold the slave to *Dunlap* as the agent
of *Hundly*, in the State of Mississippi, for $1,800, and took the note for the
payment of the price: that *Hundly* was a negro trader at the time, and told
witness he had bought the negro from Virginia, and brought him to Missis-
sippi, with many others, for sale. That he was brought to Mississippi a few
weeks before the sale to *Dunlap*. That plaintiff returned him to *Hundly*, who
said he would take him back, and sue the man he got him from, for damages.

Snyder proved that he was a licensed lawyer in Mississippi, and that by the laws
of that State, under the general issue, the defendant could have shown, that
the note sued on was given for the purchase of a slave, that the slave was af-
flicted with a redhibitory malady, and had been introduced into the State for
sale as merchandize, and was sold in violation of the constitutional prohibition.

The injunction was perpetuated and the defendant appealed.

*Thomas*, for the plaintiff. The first ground of defence is untrue in fact. The
second and third grounds are substantially the same. Neither are true in
fact or in law, if "*after appearance and issue joined*" means "*upon appear-
ance and issue joined*," and is not a mere play upon words. The *contestatio litis*
is formed by an answer or judgment by default, and is the foundation of the
suit. B. and S. Dig. 509, E. 1, and cases cited. The record shows that the
case was put at issue by the plea filed by *the defendant in person*, and that some
one, representing himself as of counsel, withdrew the plea, *destroyed the issue*,
and suffered judgment to go against the defendant. The present petition
shows that the defendant in that case appeared in person, and that his plea was
withdrawn and judgment taken, without his knowledge, authority or consent,
when he had reason to suppose the suit was at an end by the return of the
slave. The affidavit annexed to the petition verifies the truth of the facts sta-
ted therein, and throws upon the defendant the proof of authority in the attor-
ney to represent *Dunlap* in withdrawing his plea, destroying the issue made by
him, and thus depriving him of his defence. 9 Mart. 88. 12 M. 70, 255. None
was attempted. *Miller* v. *Gaskins*, 3 Rob. 94. A judicial confession can only
be made by the party, or by one specially authorised by him. Civil Code, art.
2270. 8 Mart. N. S. 547. 6 La. 296. . What the law of Mississippi is on the
subject is not shown, and it will be presumed to be the same as ours. This pre-
sents a stronger case than that contemplated in article 747 of the Code of Prac-
tice, as ground for an injunction. Here there was not even a judgment by de-
fault, to form a constructive contestation on which to rest a judgment. Article
749 authorises an injunction to restrain the execution of an order of seizure
and sale, issuing upon a judgment rendered by "a tribunal other than of this
State," for any of the "causes which prevent the sale of property mortgaged,
or otherwise bound by virtue of an act importing a confession of judgment."
Article 739 declares that: "The debtor can arrest the sale of things thus seized,
by alleging some of the following reasons, to wit: that the debt has been extin-
guished by transaction, novation, or some other legal manner ;that it was obtained
by fraud, violence, fear, or some other unlawful means."

The plaintiff alleges in his petition, and has proved that the debt was ex-
tinguished by the transaction, in returning the slave, and that the judgment was
obtained by surreptitiously withdrawing his defence. The thing adjudged can
only take place between parties, upon a contestation "formed " between them,
either express or implied. Code Prac. 357 to 360. C. C. art. 2265. B. and
S. Dig. 509, E. 1. 2 Peter's Dig. 544, note 29.

The judgment was subject to the equitable revision of a court of Chancery
in Mississippi. It can have no greater effect here. If the door was open to
relief there, it is here. Our courts possess all the power necessary to give
relief, although our system of jurisprudence differs in the form of reaching
and applying the remedy. Courts of equity will always relieve against judg-
ments at law, . unfairly obtained. 1 Story's Eq. ss. 32, 82. A fortiori when it

DUNLAP      is not only unfairly obtained, but upon an unlawful cause.  They will not ordi-
   v..      narily relieve against judgments at law, where the defence might have been
HUNDLY.     made full and complete, but was not, owing to the fault, or neglect of the party
applying for their aid.  *Dunlap* had done all he was bound to do.  He made
his defence in person; rescinded the contract of sale and purchase by the re-
turn of the slave; and extinguished the note by the transaction.

The judgment of a State court, has the same credit &c.  Conklin, 241–2.
2 Peter's Dig. 544, sec. 2.    Whatever plea could be pleaded to it in such State,
can be pleaded to it in an action on it in another State, and none other.  3 Whea-
ton, 234.    4 Cowen, 243.    That such is strictly the law, where a distinction
is recognized between the redress which is afforded at law and in equity is
clear.    But under our system, where no such distinction is recognized, the
rule would defeat the ends of justice, and enable a party to enforce a judgment
here that equity would relieve against in the State where it was rendered, un-
less our courts interpose their equity powers, or hold the judgment of another
State to conclude the parties only when rendered in the last resort upon a full
hearing.    Why drive a party, when proceeded against here upon a foreign re-
cord, into the court of Chancery where the judgment was rendered, for relief
which the equity powers of our courts can as well afford.  Civil Code, 21.  1
Story's Eq. ss. 14, 26 to 33, 59.

The fourth and last ground of defence is a general denial.  The plaintiff relies
upon two grounds to maintain his exemption from liability to pay the note,
which was the foundation of the action in Mississippi: 1. That the note was extin-
guished by transaction, in cancelling the sale and surrendering the slave, for the
purchase of which it was given.    The evidence of *M'Kouen*, the agent  who
made the sale, is full upon this point.  The inducement to cancel the sale, witness
shows, was the intemperate habits of the slave, *Hundly* declaring he would
sue his vendor in Virginia for damages.    2. That the note was given for the
purchase of a slave, introduced and sold to him in violation of the constitutional
prohibition of Mississippi.    The second section, title slaves, of the constitution
of Mississippi, prohibiting the introduction of slaves for sale. as merchandise,
after May, 1833, is in evidence.  The witness proves that the slave *Henry*, with
many others, was introduced into the State of Mississippi, and sold in violation
of this prohibition.

The Supreme Court of the State of Mississippi, in the case of *Bryan v.
Williams*, 5 Howard's Reports, and this court in the case of *Cotton* v. *Bryan*, 6
Rob. 115, have decided that all contracts made for the sale and purchase of
slaves introduced into the State of Mississippi for sale, and there sold after
May, 1833, are null and void, and that they will not lend their aid to enforce
them.

It is alleged in the petition, and shown by the record, that at the *September
term*, 1840, *Dunlap's*  plea was withdrawn, and judgment taken against him for
$394.    That at the *June term*, 1842, without notice of any kind, in the name
of correction, the judgment was altered or amended, increased and entered for
$753 40.

Which is the proper judgment?  Certainly, if either, the first.    The order of
seizure issued on the last.    Code of Practice, 546, 547, 548.    6 La. 69.    12
Mart. 558.

After a judgment is once rendered, the party against whom it was rendered,
is no longer, after the close of the term, presumed to be in court.

*Amonett*, for the appellant,

The judgment of court was pronounced by

SLIDELL, J.  *Hundly* had obtained an order of seizure and sale on a judg-
ment recovered against *Dunlap* in Mississippi.  *Dunlap* thereupon filed his pe-
tition for an injunction, in which he avers, under oath, that a plea which he had
filed to the merits in the suit in Mississippi had been fraudulently withdrawn,
and a confession entered without his authorization.  He then sets forth various
grounds of defence which he had against the action, and avers the note upon
which the suit in Mississippi was brought to have been void under the constitu-
tion of Mississippi, in which State it was made.  An injunction was obtained,
commanding the sheriff not to proceed with the sale of the property, until the

further order of the court. After trial the order of seizure and sale was an- | DUNLAP
nulled, and the injunction was perpetuated. *Hundly* appealed. | *v.*
| HUNDLY.

The record of the suit in Mississippi shows that *Dunlap* first filed, by his at-
torney, a plea of the general issue. The record then sets forth that his attorney
appeared at a subsequent term, withdrew the plea and confessed the justice of the
plaintiffs claim, upon which judgment was entered against *Dunlap* for $394 and
costs. Upon this judgment there was an execution, and return of *nulla bona*.

About two years subsequent to the rendition of the first judgment, and after
the return of the execution, an application was made by motion to correct the
judgment theretofore rendered for $394, upon a suggestion that the same
should have been for $753 40. It is stated that the defendant having had notice
of this motion, the judgment was thereupon amended, and it was decreed "that
the plaintiff recover of said defendant the sum of seven hundred and fifty three
dollars, forty cents, with interest from the — day of October, 1840, the date of
rendition of said judgment originally recovered in said court, and also costs of suit."

There is something very extraordinary and suspicious on the face of this re-
cord; and although the plaintiff in injunction has denied under oath the author-
ity of the attorney to confess judgment for him, and swears that he never aban-
doned his defence, no evidence to the contrary, except the record itself, has
been adduced.

We have not been assisted with any testimony to show what faith and credit
would be given in Mississippi to a record, which varies so materially not only
from the forms and mode of proceeding adopted in our own courts, but from
what we have supposed to be the practice at common law. It is our duty to
construe strictly the provisions of our Code authorizing the summary execution
of foreign judgments; and litigants who choose that remedy must bring them-
selves fully and unequivocally within its requisitions. See *Miller* v. *Gaskins*,
3 Rob. 94. 8 Martin, 236. *Judgment affirmed.*